IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

STANTON F. LONG and J. DAVID GIBBS,

       Plaintiffs,

vs.

LOWE'S COMPANIES, INC., ALACRITY
HOME SERVICES, LLC, and ALACTRITY
RENOVATION SERVICES, LLC,

       Defendants.

Case No. 6:16-cv-00932-AA
OPINION AND ORDER

AIKEN, Judge:

In this action, plaintiffs Stanton Long and David Gibbs and defendants Lowe's Companies, Inc., Alacrity Home Services, LLC, and Alacrity Renovation Services, LLC, file cross-motions for partial summary judgment in a dispute about defendants' duty to defend and indemnify plaintiffs.

## BACKGROUND

Plaintiffs are former owners and officers of several companies, including Alacrity Services, LLC ("Alacrity"), Coterminus Solutions, LLC, Genesis Solutions Design, LLC ("Genesis"), Gibbs & Long, LLC, and Klipspringer Holdings, Inc. Compl. ¶¶ 6–7 (doc. 1-1). On May 7, 2013, plaintiffs sold these companies (collectively, "the Contributors") to defendant Alacrity Home Services, LLC ("AHS"), a wholly owned subsidiary of defendant Lowe's

PAGE 1 – OPINION AND ORDER

Companies, Inc. ("Lowes"). *Id.* ¶ 11; Gibbs Decl. ¶ 12 (doc. 24). The sale was governed by a Contribution Agreement, which contains an indemnification clause and identifies which liabilities defendants agreed to assume. Compl. ¶¶ 11–13. Plaintiffs seek a declaratory judgment that defendants assumed liability in a dispute with a third party and, therefore, owe a duty under that agreement to defend and indemnify plaintiffs.

The third party litigation at issue involves the former corporate president of Genesis. Warren Erickson worked for Alacrity until 2006, when he became Genesis' President. Gibbs Decl. ¶ 8. He served in that capacity until April 2013. *Id.* While Mr. Erickson remained equivocal as to whether he would file suit at the time the parties negotiated the Contribution Agreement, plaintiffs included a description of Mr. Erickson's theory of liability in their disclosures to defendants. *Id.* ¶ 10. Defendants did not expressly disavow assuming liability over Mr. Erickson's litigation before the parties memorialized the Contribution Agreement. *Id.* ¶ 16.

On February 16, 2016, Mr. Erickson sued the Contributors and plaintiffs in the U.S. District Court for the Northern District of Georgia, alleging breach of contract and of a confidential relationship under Ga. Code Ann. § 23–2–58. Snider Decl. ¶ 6 & Ex. E ¶¶ 136–47 Dec. 15, 2016 (doc. 26). Mr. Erickson argued his employment contract entitled him to a twenty percent equity share in Genesis. *Id.* Ex. E ¶ 4. Mr. Erickson also claimed the Contributors and plaintiffs wrongfully transferred corporate assets and plaintiffs violated their fiduciary duties by mismanaging and undercapitalizing Genesis and by selling diluted shares of stock. *Id.* ¶¶ 91–111 & 148–62. Finally, Mr. Erickson also brought claims against plaintiffs in their personal capacity for aiding and abetting. *Id.* ¶¶ 112–35. Defendants refused to defend or indemnify

plaintiffs in the Erickson lawsuit.  Compl. ¶ 21.  Plaintiffs filed suit in this Court, seeking a declaration that defendants have a duty to defend and indemnify them in that lawsuit.

There are two possible contractual sources for defendants' duties to defend and indemnify plaintiffs' third-party litigation with Mr. Erickson.  The first is the Contribution Agreement.  *Id.* ¶ 22.  The second is an operating agreement of the holding corporation parties created to transfer Contributors' assets.  *Id.*  To transfer corporate ownership and assets, plaintiffs and defendants created Alacrity Renovation Services, LLC ("ARS") on January 10, 2013.  Gibbs Decl. ¶ 5.  Under the Contribution Agreement, the Contributors received a forty-nine percent share in ARS and AHS received a fifty-one percent share in ARS.  Compl. ¶ 11.  Plaintiffs served as corporate officers for ARS until AHS exercised its option to purchase the Contributors' shares and membership interests in ARS on December 8, 2014.  Gibbs Decl. ¶ 14.  Under the First Amended and Restated Limited Liability Company Agreement ("ARS Amended Operating Agreement"), ARS agreed to indemnify its officers for acts or omissions in their work for ARS.  Compl. ¶ 16.

In the parties' motion for summary judgment, they only seek an adjudication of plaintiffs' first claim that defendants are obligated to defend and indemnify them in their suit with Mr. Erickson.  They do not move for summary judgment on the claim that Lowe's is the alter ego of AHS and ARS.  They also do not move for the Court to consider the claim that defendants unlawfully interfered with plaintiffs' contractual relations.

## STANDARDS

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party has the burden of establishing the absence of a genuine issue of material fact.  *Id.*; *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324. "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).

Delaware substantive law controls the parties' contract dispute. "When a federal court sitting in diversity hears state law claims, the conflicts laws of the forum state are used to determine which state's substantive law applies." *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 661 (9th Cir. 1999). Under Oregon law, the parties may choose which state's substantive law controls their dispute subject to limitations that do not appear applicable here. *See* Or. Rev. Stat. § 15.350(1). Section 10.10 of the Contribution Agreement and Section 12.7 of the ARS Amended Operating Agreement chose to apply Delaware law. Snider Decl. Ex. B at 51 & Ex. D at 34 Dec. 15, 2016.

Under Delaware law, the duty to defend is "broader than the duty to ultimately indemnify." *Am. Ins. Grp v. Risk Enter. Mgmt., Ltd.*, 761 A.2d 826, 830 (Del. 2000). Although both duties generally arise from the same contractual source, *Cont'l Cas. Co. v. Alexis I. duPont Sch. Dist.*, 317 A.2d 101, 103 (Del. 1974) (explaining the duty to defend arises under contract where the defendant "assumed liability" over claims asserted against the plaintiff), defendants are obligated to defend plaintiffs even if defendants only assumed liability over one claim in the Erickson litigation. *See Id.* at 104 ("If even one count or theory of plaintiff's complaint lies within the coverage of the policy, the duty to defend arises."; *Am. Legacy Found., RP v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 623 F.3d 135, 139 (3d Cir. 2010) (applying Delaware law

and stating that so "long as one count or claim is covered under the policy, the duty to defend is triggered").

## DISCUSSION

I.  *The Contribution Agreement*

The parties' primary dispute is over whether the Contribution Agreement obligates defendants to defend and indemnify plaintiffs in the Erickson lawsuit. Two provisions of the Contribution Agreement, §§ 2.03 and 2.04, determine the answer to that question. Section 2.03 provides:

> **Contribution of Assumed Liabilities.** Subject to the terms and conditions set forth herein, at the Closing, Contributors shall assign and the Company shall assume and agree to pay, perform, and discharge all the liabilities related to the Business (collectively, the **"Assumed Liabilities"**), but Company shall not be liable for Excluded Liabilities as defined in **Section 2.04**:
>
> (a) all trade accounts payable of Contributors to third parties in connection with the Business that remain unpaid and are not delinquent as of the Closing Date and that either are reflected on the Balance Sheet Date or arose in the ordinary course of business consistent with past practice since the Balance Sheet Date;
>
> (b) all Liabilities in respect of the Assigned Contracts but only to the extent that such Liabilities were incurred in the ordinary course of business; and
>
> (c) those Liabilities of Contributors set forth on **Section 2.03(c)** of the Disclosure Schedules, including all liabilities related to the Allstate Agreements.

Snider Decl. Ex. B at 14 Dec. 15, 2016 (emphasis in original). Section 2.04 provides:

> **Excluded Liabilities.** The Company shall not assume and shall not be responsible to pay, perform or discharge any Liabilities of Contributors or any Affiliates of a Contributor of any kind or nature other than the Assumed Liabilities (the **"Excluded Liabilities"**). The Excluded Liabilities shall remain the sole responsibility of Contributors, and Contributors shall, and shall cause each of its Affiliates to, pay and satisfy in due course all Excluded Liabilities which they are obligated to pay and satisfy. Without limiting the generality of the foregoing, the Excluded Liabilities shall include, but not be limited to, the following:
>
> . . .

(c) any Liabilities relating to or arising out of the Excluded Assets;

. . .

(i) any Liabilities under the Excluded Contracts or any other Contracts, including Intellectual Properties Licenses, (i) which are not validly and effectively assigned to the Company pursuant to this Agreement; (ii) which do not conform to the representations and warranties with respect thereto in this Agreement; or (iii) to the extent such Liabilities arise out of or relate to a breach by Contributors of such Contracts prior to Closing[.]

*Id.* Ex. B at 15.

To determine whether summary judgment is appropriate, the Court must answer two questions. First, is the Erickson lawsuit an assumed liability under § 2.03? Second, if the lawsuit is not clearly an assumed liability, is it an excluded liability under § 2.04?

A.    *Assumption of Liability under § 2.03 of the Contribution Agreement*

Initially, plaintiffs argue § 2.03 unambiguously provides that ARS assumed liability arising out of the Erickson litigation. In the alternative, plaintiffs argue § 2.03 is ambiguous and extrinsic evidence is necessary to resolve the scope of ARS' assumed liabilities. Further, plaintiffs argue the extrinsic evidence shows that defendants assumed liabilities arising out of the Erickson litigation. Defendants respond that § 2.03 is clear and the Court does not need to rely on extrinsic evidence to conclude defendants did not assume the liabilities arising out of the Erickson litigation. Defendants also argue that plaintiffs fail to satisfy the condition precedent giving rise to a duty to defend and indemnify since plaintiffs failed to properly disclose the Erickson litigation under the terms of the Contribution Agreement.

1.    *Parol Evidence Is Admissible*

Delaware's parol evidence rule bars the consideration of extrinsic evidence where contracts are clear in recognition of "the salutary principle that once the parties to an agreement

fix the language which reflects their understanding, evidence which suggests a different meaning should not be received." *Mesa Partners v. Phillips Petroleum Co.*, 488 A.2d 107, 113 (Del. Ch. 1984). This also reflects Delaware law's adherence to "the objective theory of contracts" where "[c]ontract terms themselves will be controlling when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language." *Salamone v. Gorman*, 106 A.3d 354, 367–68 (Del. 2014) (quoting *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) and *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997)).

When a contract is "clear and unambiguous" and subject to only one reasonable interpretation, parol evidence of the parties' course of dealings is inadmissible and courts will construe contracts as a matter of law. *GMG Capital Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 783 (Del. 2012) ("[T]he parol evidence rule bars the admission of evidence from outside the contract's four corners to vary or contradict . . . unambiguous language."). Without an initial finding of ambiguity, "extrinsic evidence may not be used to interpret the intent of the parties, to vary the terms of the contract or to create an ambiguity." *Id.* (quoting *Eagle Indus., Inc.*, 702 A.2d at 1232). However, "where reasonable minds could differ as to the contract's meaning, a factual dispute results and the fact-finder must consider admissible extrinsic evidence." *Id.*; *see ConAgra Foods, Inc. v. Lexington Ins. Co.*, 21 A.3d 62, 69 (Del. 2011) (explaining that contracts are ambiguous when "multiple and different interpretations may reasonably be ascribed to it").

In determining whether the contract is ambiguous, the Court initially notes that §§ 2.03 and 2.04 suggest assumed and excluded liabilities could overlap since both provisions contain broad, inclusive language. For example, § 2.03 provides that ARS "shall assume and agree to

pay, perform and discharge all the liabilities related to the Business" unless the liability falls under one of the categories of "Excluded Liabilities."  Similarly, § 2.04 does not clearly delimit the categories of excluded liability since it provides that "Excluded Liabilities" are "not limited to" the examples enumerated in §§ 2.04(a)–(l).  Without more clearly defined terms, the Contribution Agreement is ambiguous because it is vulnerable to conflicting reasonable interpretations.  *See United Rentals, Inc. v. RAM Holdings, Inc.*, 937 A.2d 810, 836 (Del. Ch. 2007) ("[C]onflicting provisions of this contract render it decidedly ambiguous.").

In addition, the Court finds the absence of bridge language between § 2.03 and §§ 2.03(a)–(c) creates ambiguity.  Here, a reasonable person could either read §§ 2.03(a)–(c) as the exclusive "liabilities relating to the Business" that ARS assumes or as clarifying language to ensure that there is no mistake that ARS assumes the liabilities covered under §§ 2.03(a)–(c) in addition to other liabilities.  Because the colon separating § 2.03 and §§ 2.03(a)–(c) is pregnant with conflicting meanings, the Court sets aside the parol evidence rule and will consider extrinsic evidence to determine whether the parties present a genuine dispute over material fact for the jury to resolve.  *See Mesa Partners*, 488 A.2d at 114 (setting aside the parol evidence rule is appropriate even if the court is only able to identify a "slim reed" of ambiguity).

2.    *The Scope of § 2.03 Cannot Be Resolved on Summary Judgment*

Now that the Court has concluded extrinsic evidence is necessary to resolve the parties' conflicting interpretations of the Contribution Agreement, the Court considers the merits of the parties' contract construction to determine whether there is a disputed question of material fact for the jury.   Plaintiffs argue that § 2.03's broad, sweeping language suggests defendants assumed all of Genesis' disclosed liabilities.  Moreover, plaintiffs argue that § 2.03 contains no technical terms and so the Court should imbue the clause "all liabilities relating to the Business"

with its full and ordinary meaning. *AT&T Corp. v. Lillis*, 953 A.2d 241, 252 (Del. 2008) ("[W]hen interpreting a contract . . . we are constrained by a combination of the parties' words and the plain meaning of those words where no special meaning is intended.") (quoting *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006)).  Plaintiffs use extrinsic evidence to suggest they had a reasonable expectation that ARS would assume liability from the Erickson litigation because it relates to Genesis' business operations.

Defendants argue that §§ 2.03(a)–(c) qualifies and limits the liabilities ARS assumed. Under this reading, defendants argue liability from the Erickson litigation is not assumed because plaintiffs failed to properly disclose the liability under § 2.03(c).  Here, plaintiffs disclosed liability resulting from the Erickson liability in § 4.16 of the Disclosure Schedules instead of in § 2.03 of the Disclosure Schedules.

Plaintiffs' respond defendants' understanding that §§ 2.03(a)–(c) is an exhaustive list of assumed liabilities is "nonsensical in light of" § 2.04. Pl. Reply Mot. Summ. J. 6 (doc. 32).  In § 2.04, the parties delimit and define excluded liabilities.  Plaintiffs contend the specific enumeration of excluded liabilities supports their argument that § 2.03 is a broad and inclusive provision.  Defendants reply that plaintiffs' willingness to read §§ 2.03(a)–(c) as merely illustrative examples of the liabilities defendants agreed to assume essentially renders §§ 2.03(a)–(c) meaningless and threatens to violate principled contract construction.  *Hexion Specialty Chems. v. Huntsman Corp.*, 965 A.2d 715, 741 (Del. Ch. 2008) (describing the maxim in contract interpretation that "a contract should be read so as not to render any term meaningless").  Plaintiffs rejoin that §§ 2.03(a)–(c) still serve a purpose and resolve any doubt that defendants assume liability over trade accounts, assigned contracts, and disclosed liabilities.

Plaintiffs also offer extrinsic evidence, which consists of the parties' negotiations and previous drafts of the Contribution Agreement. Defendants' initial draft Contribution Agreement provided that §§ 2.03(a)–(c) would be the only liabilities ARS assumed. On February 28, 2013, the parties redrafted and broadened § 2.03 so ARS assumed "all liabilities related to the Business." Therefore, while it is clear that §§ 2.03(a)–(c) initially articulated an exhaustive list of the liabilities ARS assumed, it is not clear that this interpretation remains viable after the parties amended and finalized their Contribution Agreement.

The Court finds the parties put forward competing reasonable interpretations of the Contribution Agreement. In light of the need for extrinsic evidence to resolve scope of § 2.03 and the existence of multiple reasonable inferences as to whether ARS assumed liability over the Erickson litigation, summary judgment is inappropriate. *Jack Rowe Assocs., Inc. v. Fisher Corp.*, 833 F.2d 177, 183 (9th Cir. 1987) (holding that where a party uses "parol evidence [to] tender . . . a material question of fact . . . summary judgment [i]s premature"); *see also Brinderson-Newberg Joint Venture v. Pac. Erectors, Inc.*, 971 F.2d 272, 281 (9th Cir. 1992) (directing the district court to enter summary judgment because California law barred the admission of parol evidence and the only disputed questions of fact arose from extrinsic evidence).

3. *Whether Plaintiffs Met the Condition Precedent Giving Rise to Defendants' Duties to Defend and Indemnify Is a Question of Fact*

Defendants argue that even if § 2.03 could encompass liability resulting from the Erickson litigation, ARS is not obligated to defend and indemnify plaintiffs on the basis that plaintiffs failed to disclose the Erickson litigation as a potential liability in § 2.03 of the disclosure schedules. This argument is premised on the contract interpretation that §§ 2.03(a)–

(c) articulate the exclusive list of assumed liabilities. As explained above, the scope of § 2.03 cannot be resolved on summary judgment. Even if the Court were to accept defendants' interpretation of § 2.03, however, summary judgment would still be inappropriate because the failure to disclose the Erickson litigation in § 2.03 of the Disclosure Schedules may be a de minimis breach.

It is undisputed that the Erickson litigation was not disclosed in § 2.03 of the Disclosure Schedules. But it is also undisputed that the Erickson litigation *was* disclosed elsewhere, in § 4.16 of the Disclosure Schedules. Snider Decl. Ex. L at 7 Dec. 15, 2016. Was locating the disclosure in a separate part of the Disclosure Schedules a material breach? This open question is important to resolve because "a non-material breach" does not prevent a party from "enforcing a valid contract right." *Costantini v. GJP Developers*, 2015 WL 5122992, * 9 (Del. Ch. Aug. 24, 2015); *see also DeMarie v. Neff*, 2005 WL 89403, *4 (Del. Ch. 2005) ("[A] nonmaterial–or *de minimis*–breach will not allow the non-breaching party to avoid its obligations under the contract."). On this point, plaintiffs suggest their course of dealings indicate that if there were a breach, it would be de minimis. For example, ARS is not disclaiming thirty-five other liabilities it assumed, even though those liabilities, like the Erickson litigation, were disclosed in § 4.16 of the Disclosure Schedules. Gibbs Decl. ¶¶ 19-20 & Ex. 3. The jury will resolve these factual disputes. *See Qualcomm Inc. v. Tex. Instruments Inc.*, 875 A.2d 626, 630 (Del. 2005) (explaining that the materiality of the breach is a question of fact).

B.    *Exclusion of Liability Under § 2.04 of the Contribution Agreement*

This section considers whether § 2.04 of the Contribution Agreement clearly excludes liability resulting from the Erickson litigation. Even though § 2.03 is ambiguous, defendants could prevail on their motion for summary judgment if liabilities related to the Erickson

litigation are clearly excluded liabilities under § 2.04, which lists specific types of liabilities that do not give rise to a duty to defend and indemnify plaintiffs.

The parties agree that plaintiffs never assigned Mr. Erickson's employment contract to ARS. The Contribution Agreement states in various clauses that contracts that plaintiffs do not assign to ARS cannot give rise to a duty to defend and indemnify. For example, unassigned contracts are Excluded Contracts and Excluded Assets under § 2.02(a). Furthermore, § 2.04(c) and § 2.04(i) respectively provide that Excluded Assets and Excluded Contracts do not give rise to assumed liabilities. *See* § 2.04(c) (excluding liability "relating to or arising out of the Excluded Assets"); § 2.04(i) (excluding liability "under the Excluded Contracts"). Plaintiffs argue that they could not assign Mr. Erickson's employment contract since it expired by its terms in 2012, prior to the negotiating and consummating the Contribution Agreement, but expired contracts regularly give rise to liability. As a technical matter, plaintiffs' failure to assign the employment contract renders it an excluded liability.

Even so, whether defendants had a duty to defend and indemnify plaintiffs in the Erickson litigation cannot be resolved on summary judgment. Plaintiffs' failure to assign the Erickson contract is a technical error, similar to plaintiffs' error in disclosing the Erickson litigation as a potential liability in § 4.16 rather than § 2.03. Whether that error excuses defendants' performance of duties under the contract depends on whether the error was material or de minimis. *See DeMarie*, 2005 WL 89403 at *4. The purpose of contractual provisions requiring disclosure or assignment is to ensure that a party is on notice of the liabilities it is agreeing to assume. Here, it is likely a jury would find that plaintiffs' disclosure of the Erickson litigation in § 4.16 effectively notified defendants of that litigation as a potential liability. From there, a jury could easily find that the failure to assign the contract was a de minimis breach —

and that defendants retained the obligation to defend and indemnify plaintiffs notwithstanding their technical noncompliance with contract provisions.

Even if it were appropriate to grant summary judgment to defendants based on § 2.04, summary judgment would not be warranted as to all claims in the Erickson litigation; it would only be warranted as to those claims that arise out of Mr. Erickson's employment contract. Mr. Erickson asserted the following claims against plaintiffs: breach of corporate fiduciary duties, aiding and abetting breach of corporate fiduciary duties, breach of a confidential relationship under Ga. Code Ann. § 23-2-58, breach of contract, and unlawful transfer of corporate assets under Ga. Code Ann. § 18-2-70. Snider Decl. Ex. E Dec. 15, 2016.

Mr. Erickson's breach of contract claim plainly arises out of the employment contract. Mr. Erickson's claim for an unlawful transfer of corporate assets also arises out of the employment contract. Mr. Erickson identifies his employment contract as the source of the ownership right asserted over the twenty percent equity interest in Genesis. Plaintiffs fail to explain why Mr. Erickson's unlawful transfer claim would arise out of "a set of rights and obligations that are independent of any contract[.]" *Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 157 (Del. 2002); *see U.S. Capital Funding VI, Ltd. v. Patterson Bankshares, Inc.*, 137 F. Supp. 3d 1340, 1365 & 1368 (S.D. Ga. 2015) (illustrating that an ownership claim in the asset transferred is a necessary element of the claim and contractual rights serve as the basis of a fraudulent conveyance claim).

Fiduciary duties, however, do not arise out of contractual obligations. In *Parfi*, 817 A.2d at 151, the Delaware Supreme Court considered whether a contract's arbitration clause that provided arbitration for all claims "arising out of or in connection with" the agreement covered the plaintiff's fiduciary duty claims. The Delaware Supreme Court explained, even "resolv[ing]

any doubt as to arbitrability in favor of arbitration," plaintiff's fiduciary duty claims were beyond the scope of the arbitration clause. *Id.* at 156. Even though "some or all of the same facts that relate to the transactions that provided the basis for its contract claims," fiduciary duties provide "a set of rights and obligations that are independent of any contract[.]" *Id.* at 157. Applying *Parfi*, the Court concludes that Mr. Erickson's fiduciary duty claims do not arise out of or relate to his employment contract.

Defendants respond that *Parfi* does not control because "the analysis in that case is based on Delaware's Corporations Act," which does not apply to limited liability companies. Def.'s Resp. Mot. Summ. J. 12 (doc. 30). Yet defendants do not cite any law supporting this distinction nor do they explain why the difference in corporate form would lead the Delaware Supreme Court to treat limited liability companies differently. Delaware's Limited Liability Company Act "permits the contractual elimination of default principles of fiduciary duty," but it does not necessarily follow that fiduciary duties flow from exclusively from the parties' contractual obligations. *Douzinas v. Am. Bureau of Shipping, Inc.*, 888 A.2d 1146, 1150 (Del. Ch. 2006). To the contrary, fiduciary duties ring in tort and arise out of common law, regardless of defendants' corporate form. *See In re Rural Metro Corp.*, 88 A.3d 54, 98 (Del. Ch. 2014) ("A breach of fiduciary duty is an equitable tort."), *decision clarified on denial of reargument sub nom. In re Rural Metro Corp. Stockholders Litig.* (Del. Ch. Mar. 19, 2014); *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 176 (Del. 2002) (explaining that even when a contract "supplant[s] common law fiduciary duty principles," the "default duty of loyalty and fair dealing" plays a role in determining whether there has been a breach); *Feeley v. NHAOCG, LLC*, 62 A.3d 649, 661 (Del. Ch. 2012) (explaining fiduciary duties arise out of equitable considerations and apply to Limited Liability Companies because a "fiduciary

relationship" arises out of any "situation where one person reposes special trust in and reliance on the judgment of another or where a special duty exists on the part of one person to protect the interests of another") (quoting *Metro Ambulance, Inc. v. E. Med. Billing, Inc.*, 1995 WL 409015, *2 (Del. Ch. July 5, 1995)); *see also* Myron T. Steele, *Judicial Scrutiny of Fiduciary Duties in Delaware Limited Partnerships and Limited Liability Companies*, 32 Del. J. Corp. L. 1, 5–6 (2007) (explaining "no relevant Delaware statute names, numbers, or defines any fiduciary duty" and "the continued importance of the common law of corporations is not the result of happenstance, but reflects a policy choice made by the Delaware General Assembly") (quoting Leo E. Strine, *If Corporate Action Is Lawful, Presumably There Are Circumstances in Which It's Equitable to Take That Action: The Important Corollary to the Rule of Schnell v. Chris-Craft* 4 (Regents Lecture, UCLA School of Law, Mar. 31, 2005)).[1] Further, nothing in *Gatz Properties, LLC v. Auriga Capital Corp.*, 59 A.3d 1206, 1212 (Del. 2012), appears to overturn Delaware's long-standing precedent holding fiduciary duties arise out of equity and common law. Therefore, the Court finds that defendants' arguments impermissibly "speculat[e] as to future changes in the law." *See Orkin v. Taylor*, 487 F.3d 734, 741 (9th Cir. 2007) (explaining because a federal court, which sits in a diversity action, must "approximate state law as closely as possible in order to make sure that the vindication of the state right is without discrimination," a court must "take state law as it exists without speculating as to future changes in the law").

Moreover, *Douzinas* is distinguishable.    There, the Court of Chancery found the arbitration clause covered the plaintiff's claims because the clause at issue was significantly broader than the parties' arbitration clause in *Parfi*. The arbitration clause at issue in *Douzinas* covered "any dispute arising under or related to this Agreement (whether arising in contract, tort

---

[1] Myron Steele is the former Chief Justice of the Supreme Court of Delaware, while Leo Strine is the current Chief Justice of that court.

or otherwise, and whether arising at law or in equity)." *Douzinas*, 888 A.2d at at 1148. By contrast, § 2.04 is directed at liability that arises out of an unassigned contract. Because § 2.04(c) and § 2.04(i) more closely resemble the narrow clause considered in *Parfi* than the broad clause at issue in *Douzinas*, the Court finds defendants' argument unconvincing.

Finally, the Court finds that Mr. Erickson's claim for breach of a confidential relationship under Ga. Code Ann. § 23–2–58 does not arise out of the employment contract. Georgia law treats Mr. Erickson's rights under Ga. Code Ann. § 23–2–58 as if they arose under a fiduciary duty. *See In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 682 n.12 (N.D. Ga. 2003) ("The Georgia Court of Appeals has indicated that it considers the terms 'fiduciary relationship' and 'confidential relationship' to be synonymous.") (quoting *Bowen v. Hunter, Maclean, Exley & Dunn*, 525 S.E.2d 744, 748 (Ga. Ct. App. 1999)); *see also U.S. Capital Funding VI, Ltd. v. Patterson Bankshares, Inc.*, 137 F. Supp. 3d 1340, 1374 (S.D. Ga. 2015). Moreover, Mr. Erickson need not identify a contractual duty in order to assert a claim under Ga. Code Ann. § 23–2–58. *Wright v. Apartment Inv. & Mgmt. Co.*, 726 S.E.2d 779, 786 (Ga. Ct. App. 2012) ("[A] confidential relationship may be found whenever one party is justified in reposing confidence in another, [so] the existence of a confidential or fiduciary relationship is generally a factual matter for the jury to resolve.") (quoting *Bienert v. Dickerson*, 624 S.E.2d 245, 249 (Ga. Ct. App. 2005)); *Bedsole v. Action Outdoor Advert. JV, LLC*, 750 S.E.2d 445, 452 (Ga. Ct. App. 2013) ("Generally the relationship between an employer and employee is that of arms-length bargaining. This is not to say, however, that under a particular fact situation a confidential relationship can never exist between an employer and his employee.") (quoting *Cochran v. Murrah*, 219 S.E.2d 421, 424 (Ga. 1975)); *see* Ga. Code Ann. § 23–2–58.

PAGE 16 – OPINION AND ORDER

In their reply brief, defendants for the first time present an additional argument as to why Mr. Erickson's litigation is an excluded liability. Defendants' argument that § 2.04(a) clearly excludes liability goes as follows. Section 2.04(a) provides that ARS does not assume any liability "arising or incurred in connection with the negotiation, preparation, investigation and performance" of the Contribution Agreement. Snider Decl. Ex. E at 10 Dec. 15, 2016. Because Mr. Erickson's suit appears to center on Genesis' valuation before plaintiffs sold it to defendants, the gravamen of the Erickson litigation arose "in connection with the negotiation" of the Contribution Agreement and § 2.04(a) would exclude liability. Therefore, since ARS did not assume liability, defendants insist ARS is not obligated to defend and indemnify plaintiffs. However, defendants waived this argument by raising it for the first time in their third brief to the Court on the parties' cross-motion for summary judgment. *Bazuaye v. I.N.S.*, 79 F.3d 118, 120 (9th Cir. 1996) ("Issues raised for the first time in the reply brief are waived."); *Hoffman v. Foremost Signature Ins. Co.*, 989 F. Supp. 2d 1070, 1087 (D. Or. 2013) ("The district court need not consider arguments raised for the first time in a reply brief") (quoting *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007)).

Mr. Erickson's employment contract was never assigned and thus is an excluded liability. Defendants are not entitled to summary judgment on that ground, however, because there is a question of material fact whether the failure to assign the contract was a material breach. Further, even if the breach was material, the employment contract's status as an excluded liability would absolve defendants only of their duty to indemnify plaintiffs for damages stemming from Counts IV and V of Mr. Erickson's complaint.

II.    *The ARS Amended Operating Agreement*

Plaintiffs argue that even if the Contribution Agreement does not require ARS to defend and indemnify plaintiffs from Mr. Erickson's suit, then § 7.1 of the ARS Amended Operating Agreement does.  Section 7.1 provides:

> Each Covered Person shall be indemnified by the Company against any losses, judgments, liabilities, claims, damages, costs, expenses (including reasonable legal fees and other expenses actually incurred in investigating or defending against any such losses, judgments, liabilities or claims and expenses actually incurred enforcing this Agreement) and amounts paid in settlement of any claim (approved in advance and in good faith by the Board) sustained by any of them by reason of any act or omission or alleged act or omission in connection with the activities of the Company (including any subsidiaries thereof) unless there is a final judicial determination by a court of competent jurisdiction to which all rights of appeal have been exhausted or expired that the Covered Person did not act reasonably and in good faith in his or her efforts to actively manage the business in a prudent and professional manner.

Snider Decl. Ex. D at 27 Dec. 15, 2016.  Plaintiffs contend § 7.1 obligates defendants to defend and indemnify them in Mr. Erickson's lawsuit because Mr. Erickson alleged that plaintiffs violated their fiduciary duties by undervaluing Genesis' assets in preparation for its sale to defendants.

Defendants respond that plaintiffs allege no facts from which a jury could reasonably conclude that plaintiffs acted "in connection with the activity of the Company [ARS] (including any subsidiaries thereof)."  They explain that the conduct at issue predates plaintiffs' sale of Genesis since all of Mr. Erickson's allegations relate to actions plaintiffs took as members of Genesis and not as members of ARS.

The Court finds defendants' rationale convincing since Mr. Erickson does not make any specific allegations regarding plaintiffs' misconduct after his departure in April 2013 and plaintiffs' deal with defendants closed in May 2013.  Snider Decl. Ex. E at 23 Dec. 15, 2016; Pls.' Mot. Summ. J. 10.  *See Bernstein v. TractManager, Inc.*, 953 A.2d 1003, 1011 (Del. Ch.

PAGE 18 – OPINION AND ORDER

2007) ("[T]he conduct complained of must occur at a time when one is a corporate officer or director."). Because plaintiffs were not members of ARS at the time of their alleged misconduct, the ARS Amended Operating Agreement does not obligate ARS to defend or indemnify plaintiffs.

## CONCLUSION

The Court DENIES plaintiffs' motion for summary judgment (doc. 22) and DENIES defendants' motion for summary judgment (doc. 25).

IT IS SO ORDERED.

Dated this 29 day of March 2017.

Ann Aiken
United States District Judge